## No. 11,138.

TONOPAH COLORADO LEASING CO. v. SEEMAN INVESTMENT
AND FINANCE CO.

Decided June 1, 1925.   Rehearing denied June 22, 1925.

Action to recover on covenant of a lease concerning the
payment of taxes.   Judgment for plaintiff.

*Affirmed.*

*On Application for Supersedeas.*

1. LANDLORD AND TENANT—*Payment of Taxes—Lease—Construction.*
   Covenant in a lease, to pay taxes, held to operate from the date
   of its execution by lessor, although lessee, being in possession,
   did not sign it until some three months thereafter.

2. *Taxes—When Payable.* Where a lease was terminated May 1,
   1923, the lessee is held liable for the payment of the last half of
   the taxes for 1922, under a covenant that he would pay all taxes
   "when and as the same became payable."

*Error to the District Court of Clear Creek County, Hon.
S. W. Johnson, Judge.*

Mr. WARWICK M. DOWNING, Mr. RICHARD E. DOWNING,
for plaintiff in error.

Messrs. MORRISON & DESOTO, for defendant in error.

*Department Three.*

MR. CHIEF JUSTICE ALLEN delivered the opinion of the
court.

THIS is an action by lessor against lessee to recover upon
a covenant in the lease concerning the payment of taxes.
Judgment for plaintiff.   Defendant brings this writ, and
applies for a supersedeas.

On August 8, 1922, the defendant was in possession of the leased property, consisting of mining property, under a lease from the Continental Mines Power and Reduction Company. The title of that lessor being doubtful, defendant began to negotiate with plaintiff, and on November 3, 1922, agreed with it to remain in possession and work the property while plaintiff was perfecting its title.

On December 27, 1922, the plaintiff, as lessor, signed and acknowledged the lease involved in the instant case, and delivered the instrument to the attorney for defendant. Defendant made some further examination of plaintiff's title, and delivered the lease, signed up on its part, back to plaintiff, on or about March 15, 1923. The lease bears the date of December 27, 1922, being the date it was executed by plaintiff lessor.

The covenant sued upon reads as follows: "11. To promptly pay all taxes of whatsoever kind or nature legally assessed against said demised premises which may hereafter become due and payable, when and as the same become payable."

It is conceded that defendant is liable for the first half of the taxes for the year 1922 if the covenant operates from and after December 27, 1922. The question argued is, does it so operate?

The complaint alleges, and the answer does not deny, that the defendant entered into the possession of the property. The evidence shows that defendant was in possession at the time the lease was prepared, signed, executed and delivered by plaintiff to defendant's attorney, December 27, 1922. Under the facts of this case, the lease operated from its date, notwithstanding the fact that defendant for a time held the instrument and did not deliver it back to plaintiff until about March 15, 1923. The facts are somewhat analogous to those in *Johnson v. Shelley,* 54 Utah, 305, 180 Pac. 430, where the syllabus, in the Pacific Reporter reads as follows: "Where the terms of a lease were agreed upon, the lease written, and the tenant went into possession, but the signing of the lease was delayed

until the landlord could acquire title to property included therein, the liabilities of the tenant dated from the agreement, not from the execution of the lease."

In the opinion, it is said: "It seems to us quite evident that there was but one agreement between the parties, and that was the agreement under and by which defendant took possession of the premises. The agreement by its terms fixes definitely the date when the relationship of landlord and tenant between the parties began. * * * The relationship * * * existed from the actual date of the agreement between the parties, which, as stated by themselves in the written lease, was March 1st; that in view that the lease as written on March 1st was subsequently adopted, therefore from that time on both parties were bound by the terms of the lease * * *, and either party would be liable to the other for failure to keep the covenants as therein stated."

We conclude that the defendant was liable on the covenant as one taking effect, or relating back to, December 27, 1922. There was no error in holding the defendant liable for the first half of the 1922 taxes.

The lease contained a provision whereby defendant had the option to terminate it. Under the exercise of that option, the lease terminated on May 1, 1923. This raises the question whether defendant was liable for, or required to pay, the last half of the 1922 taxes. This last half was not "due", in the sense that it could be legally demanded or collected, until the last day of July, 1923. But the covenant was not to pay the taxes when "due;" it provided that they be paid "promptly * * * when and as the same become payable." The taxes were payable not only on the last day of July, but also "before" that date. Section 7190, C. L. 1921 reads as follows: "All taxes shall be due and payable, one-half on or before the last day of February, and the remainder on or before the last day of July of the year following the one in which they were assessed. The treasurer shall receive the tax assessed

against any person who may offer to pay the same, at any time after the tax warrant shall come into his hands."

The last day of July is not a date when taxes first become *payable* but is the last date on which they may be paid before they become delinquent and draw interest at the rate of fifteen per cent per annum, as provided in section 7386, C. L. 1921. All the 1922 taxes were "payable" long before defendant surrendered the lease, and the covenant was to pay them "promptly" when "payable." There was no error in holding defendant liable for the last half of the 1922 taxes.

The application for a supersedeas is denied, and the judgment is affirmed.

MR. JUSTICE SHEAFOR and MR. JUSTICE WHITFORD, sitting for MR. JUSTICE CAMPBELL, concur.